Citation Nr: 1641951 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 09-37 983 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUES

1. Entitlement to service connection for a bilateral shoulder disorder.

2. Entitlement to service connection for a left calf disorder.

3. Entitlement to service connection for a left hand disorder.

4. Entitlement to service connection for a left thumb disorder.

5. Entitlement to service connection for a cervical spine disorder.

6. Entitlement to service connection for a thoracolumbar spine disorder.

7. Entitlement to service connection for a left knee disorder.

8. Entitlement to service connection for gastroesophageal reflux disease (GERD) and hiatal hernia, to include as secondary to medications prescribed for service-connected disabilities.

9. Entitlement to a permanent clothing allowance under 38 U.S.C.A. § 1162.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

L. Barstow, Counsel


INTRODUCTION

The Veteran had active military service from June 1971 to June 1991.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2002 administrative decision and from April 2008 and April 2009 rating decisions of the VA Regional Office (RO) in Louisville, Kentucky. 

In September 2011, the Veteran testified at a hearing conducted before the undersigned. A transcript of the hearing has been associated with the claims file. 

In November 2011, the Board reopened the previously denied claims of service connection for bilateral shoulder, left calf, left hand, left thumb and cervical spine disorders. The Board remanded the reopened issues, as well as the other issues on appeal, to obtain additional treatment records and afford the Veteran VA examinations. As to the issues being decided herein, review of the record indicates substantial compliance. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The issues of service connection for GERD and hiatal hernia and for a left knee disorder and entitlement to a permanent clothing allowance being remanded are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. A bilateral shoulder disorder was not present during service; arthritis was not manifest within one year of discharge from service; and a currently diagnosed bilateral shoulder disorder did not develop as a result of any incident during service.

2. The Veteran has not had a chronic left calf disorder, as opposed to pain, at any time since filing his claim for compensation.

3. A left hand disorder was not present during service; arthritis was not manifest within one year of discharge from service; and a currently diagnosed left hand disorder did not develop as a result of any incident during service.

4. A left thumb disorder was not present during service; arthritis was not manifest within one year of discharge from service; and a currently diagnosed left thumb disorder did not develop as a result of any incident during service.

5. A cervical spine disorder was not present during service; arthritis was not manifest within one year of discharge from service; and a currently diagnosed cervical spine disorder did not develop as a result of any incident during service.

6. A thoracolumbar spine disorder was not present during service; arthritis was not manifest within one year of discharge from service; and a currently diagnosed thoracolumbar spine disorder did not develop as a result of any incident during service.


CONCLUSIONS OF LAW

1. A bilateral shoulder disorder was not incurred or aggravated in service. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2015).

2. A left calf disorder was not incurred or aggravated in service. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2015).

3. A left hand disorder was not incurred or aggravated in service. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2015).

4. A left thumb disorder was not incurred or aggravated in service. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2015).

5. A cervical spine disorder was not incurred or aggravated in service. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2015).

6. A thoracolumbar spine disorder was not incurred or aggravated in service. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Such notice should also address VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). While the required notice should be furnished prior to the issuance of the appealed rating decision, any initial errors of notice will not be prejudicial if: 1) corrective actions (e.g., issuance of a post-adjudication notice letter containing the required information) are taken, and 2) the appeal is readjudicated (e.g., in a Supplemental Statement of the Case). See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). 

In this case, June 2007, January 2008, November 2008 and March 2009 letters were provided to the Veteran in accordance with 38 C.F.R. § 3.159(b)(1). 

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) recently held that the Veterans Law Judge (VLJ) who chairs a Board hearing fulfill two duties to comply with 38 C.F.R. § 3.103(c) (2015). These duties consist of 1) fully explaining the issues and (2) suggesting the submission of evidence that may have been overlooked. Here during the hearing the undersigned VLJ sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked, or was outstanding that might substantiate the claim. The Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), and no prejudice has been identified in the conduct of the Board hearing.

VA also has a duty to assist the Veteran with the development of facts pertinent to the appeal. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). This duty includes the obtaining of "relevant" records in the custody of a Federal department or agency under 38 C.F.R. § 3.159(c)(2), as well as records not in Federal custody (e.g., private medical records) under 38 C.F.R. § 3.159(c)(1). VA will also provide a medical examination if such examination is determined to be "necessary" to decide the claim. 38 C.F.R. § 3.159(c)(4).

In this case, the Veteran's service treatment records (STRs) and post-service medical records were obtained. In obtaining the Veteran's post-service medical records, the case was partly remanded for the Veteran to submit current authorization and release forms to allow VA to obtain provide medical records. The Veteran submitted signed forms in November 2012; however, he also reported that such records had already been submitted. A review of the claims file confirms that the records identified by the Veteran in November 2012 are of record. 

Pertinent VA examinations were obtained in February 2008 and April 2013. 38 C.F.R. § 3.159(c)(4). The VA examinations obtained in this case are collectively sufficient, as the examiners conducted complete examinations, recorded all findings considered relevant under the applicable law and regulations, and offered well supported opinions based on consideration of the full history of the disorders. The Board finds that VA's duty to assist the Veteran with respect to obtaining a VA examination concerning the issues adjudicated herein has been met. 38 C.F.R. § 3.159(c)(4). 

In finding the examinations adequate, the Board acknowledges the representative's September 2016 argument that the 2013 examinations were not adequate as orthopedic examinations were requested by the Board, and an internist conducted the examinations. The representative argues that the Board's remand directives were not complied with as an orthopedist did not conduct the examinations. However, the record does not indicate that the examiner lacks the necessary expertise to have conducted the examinations. The representative also argues that the examiner did not consider the Veteran's lay statements. As discussed below, the examination reports clearly reflect the Veteran's lay statements with regard to his disorders. Consequently, the Board concludes that the examinations are adequate and its remand directives were substantially complied with. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (another remand not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 


II. Analysis 

Service connection may be granted for disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C.A. §§ 1110, 1131. Generally, service connection requires (1) the existence of a present disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Pursuant to 38 C.F.R. § 3.303(b) when a chronic condition (e.g., arthritis) is present, a claimant may establish the second and third elements by demonstrating continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Certain chronic diseases (e.g., arthritis) may be also presumptively service connected if they become manifest to a degree of 10 percent or more within one year of leaving qualifying military service. 38 C.F.R. §§ 3.307(a)(3); 3.309(a) (2015). 

The Board notes that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. See 38 U.S.C.A. §§ 1110, 1131. In the absence of proof of present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Degmetich v. Brown, 104 F.3d 1328 (1997); Wamhoff v. Brown, 8 Vet. App. 517, 521 (1996).

Lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). 




 1. Bilateral Shoulder Disorder

The Veteran's May 1971 enlistment examination, as well as February 1974 and April 1978 examinations, all revealed clinically normal upper extremities. In his reports of medical history, he denied symptoms of swollen or painful joints; arthritis, rheumatism, or bursitis; bone, joint or other deformity; and painful or "trick" shoulder. A June 1978 record shows that the Veteran complained of chest pain; no shoulder complaints were made. No details regarding the incident resulting in chest pains were provided. June 1980 and January 1983 examinations again revealed clinically normal upper extremities. In his reports of medical history, the Veteran again denied symptoms of swollen or painful joints; arthritis, rheumatism, or bursitis; bone, joint or other deformity; and painful or "trick" shoulder. A September 1985 record shows that the Veteran was in a motor vehicle accident two months ago. He reported right upper trapezius pain and that he noted pain following the accident. The diagnosis was right upper trapezius strain. A January 1987 examination and the Veteran's April 1991 retirement examination both revealed clinically normal upper extremities. In the April 1991 report of medical history, the Veteran continued to deny symptoms of swollen or painful joints; arthritis, rheumatism, or bursitis; bone, joint or other deformity; and painful or "trick" shoulder. There is no indication of any bilateral shoulder complaints following a fall reportedly occurring in 1978.

The earliest evidence of post-service shoulder complaints is in July 2001. At that time, the Veteran reported left shoulder pain. X-rays of the left shoulder showed a tiny spur. Acromioclavicular (AC) joints and shoulder joints were reported to be well preserved. An ultrasound of the Veteran's left shoulder in January 2002 showed no significant pathology. X-rays of the both shoulders in June 2004 were reported to be normal. A February 2005 treatment record shows that the Veteran reported having a history of osteoarthritis of all joints. He reported an injury during service in 1978 when he fell from 100 feet and hit water. Right shoulder X-rays in May 2005 revealed minimal osteoarthritis of the AC joint. A November 2005 record shows that the Veteran reported falling off a ladder three to four weeks ago and having a bruised right arm. X-rays of the left shoulder in August 2006 showed osteoarthritis of the AC joint. 

Treatment records from the Veteran's chiropractor, D.R.C., D.C., in December 2006 show that the Veteran reported that the onset of his left shoulder problems was from falling eight to ten months ago. The Veteran's treatment records do not contain medical opinions relating a bilateral shoulder disorder to his military service.

A positive opinion from Dr. D.R.C. was provided in February 2007. Dr. D.R.C. reported that the Veteran was first seen in December 2006 complaining of low back pain radiating into the left hip and knee and left shoulder pain. Dr. D.R.C. reported that the Veteran related suffering from osteoarthritis pain in various parts of his body since 2000. They reported that the Veteran stated that he believed his arthritis was due to a fall that occurred during his service in the military. They reported reviewing evidence submitted by the Veteran, including radiographs. It was their opinion that, after examination and treatment in their office and reviewing the medical history submitted by the Veteran, the arthritis in the shoulders was consistent with the history of a fall as described and seen in the medical records. They opined that given that information, they believed that the Veteran's current symptoms were primarily due to the traumatic fall mentioned in his military health records occurring in 1978. Dr. D.R.C. also opined that contributing factors included the frequent carrying of heavy military equipment and backpacks throughout his 20 years of active military service in the infantry. They concluded that the Veteran's osteoarthritis was directly related to the traumatic injury in 1978 and continued exacerbation due to his job requirements during his 20 years of active military service. 

The Veteran was afforded a VA examination in February 2008. The Veteran reported that in July 2001, he was driving and looking over his left shoulder when his entire left arm when numb. He reported being told he had a pulled muscle. The examiner discussed the Veteran's pertinent post-service treatment records. The Veteran related his current problems to a fall during service. He reported that he thought in 1978, he was on a cable exercise to "build confidence" and dropped approximately 100 plus feet into water. He reported that it was like a "belly-flop into the water" and that he had the "wind knocked out of me." He reported that after a week or two, he had no real problems until years later. The Veteran reported that his shoulders hurt after that fall and that he frequently had stiff shoulders from carrying a heavy pack in the infantry. The Veteran was diagnosed with bilateral shoulder AC joint osteoarthritis. The Veteran's employment history consisted of working as a mail processor at the U.S. Post Office for 15 years.

The examiner opined that the Veteran's current complaints were less likely than not caused by or a result of his reported fall in 1978. The examiner reported that although that fall in 1978 was significant as reported by the Veteran, there was no evidence of complaints of shoulder pain at time of injury. The examiner noted that the Veteran did have one report of right shoulder stiffness diagnosed as a trapezius strain in 1985, but there was no documentation of chronic pain after that and no mention on future physical examinations. The examiner noted that there was no mention or complaint of left shoulder pain in the Veteran's STRs. The examiner observed that they were not able to find any documentation of left shoulder follow-up until 2001, some ten years after his military retirement. The examiner noted the 2001 and 2004 X-rays. The examiner concluded that the Veteran's bilateral shoulder pain/mild AC joint osteoarthritis was less likely related to service. 

The Veteran submitted an additional medical opinion from Dr. D.R.C. dated in August 2008. The Veteran reported that he believed that his arthritis was due primarily to a fall that occurred during military service and exacerbated by a motor vehicle accident in 1985 while on active duty. Dr. D.R.C. reported reviewing evidence submitted from the Veteran that he had submitted to VA in support of his claim as well as X-rays taken since 2004. 

Dr. D.R.C. opined that the Veteran's arthritis of the right shoulder could be related back to the fall in 1978 and motor vehicle accident in 1985 when he was re-injured. They opined that a fall and injury to the degree that was sustained by the Veteran in 1978 could justifiably explain the arthritis that he was experiencing in the right shoulder. Dr. D.R.C. further opined that that plus the re-injury in 1985 and the 20 years of active duty explained the symptoms he was currently experiencing. As for the Veteran's left shoulder arthritis/bone spur, Dr. D.R.C. opined that that symptom could be related back to the fall in 1978. They again opined that a fall and injury to the degree that was sustained by the Veteran in 1978 could justifiably explain the current symptoms he was experiencing in the left shoulder; that plus the 20 years of active duty. Dr. D.R.C. concluded that, in their professional opinion, after treating the Veteran over 30 times for his symptoms, and reviewing radiological reports, the Veteran's arthritis in his left thumb, left and right shoulders, neck, mid and lower back (as well as resulting left knee and left calf pain and numbness in hands) was due primarily to a traumatic fall mentioned in his military health records as occurring in 1978 during military service and exacerbated by the motor vehicle accident in 1985 as indicated above. They further concluded that, also contributing to a lesser extent to his current condition, was the Veteran's frequent carrying of heavy military equipment and back packs throughout his 20 years of active military service as an infantryman.

The Veteran was provided a VA examination in April 2013. The Veteran's pertinent STRs and post-service records were reported. The examiner noted that except for the right trapezius strain in service, there were no other documented episodes of traumatic injury to any joint and no other complaints or treatment for any joint condition while in service. The Veteran was diagnosed with mild bilateral degenerative joint disease of the AC joints. The examiner again noted the 1985 motor vehicle accident and the Veteran's development of left shoulder pain in 2001. The examiner reported that the Veteran could not tell them of any other incidence of pain or any treatment for right shoulder pain. 

The examiner opined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner observed that the Veteran was noted to have one incident of chronic right shoulder pain for two months diagnosed as right trapezius strain, which began while driving in 1985. The examiner noted that the Veteran continued on in the service for another six years without complaint of bilateral shoulder pain and did not have any permanent profile for any condition of the shoulders. The examiner noted that the Veteran was first seen in 2001 with complaints of left shoulder pain, some ten years after discharge from service. The examiner noted that X-rays of the shoulders were normal in 2004. The examiner observed that in 2005, the Veteran's VA physician noted that he had fallen from a ladder and injured his right arm. The examiner also noted the December 2006 record in which the Veteran reported falling eight to ten months prior and that that was the onset of his left shoulder pain. The examiner opined that the Veteran had current findings on that day's exam of mild age appropriate degenerative joint disease of the AC joints, which were far more likely to be impacted by his 15 years of sorting mail for the U.S. Postal Service and his two injuries post discharge. The examiner opined that there was insufficient medical evidence to substantiate a nexus.

The examiner opined that with reference to Dr. D.R.C.'s letters, he had noted treatment records related to the Veteran's shoulder. The examiner observed that although Dr. D.R.C. noted in his conclusion that the Veteran's left shoulder arthritis was due primarily to a traumatic fall mentioned in his military health records as occurring in 1978 during military service and exacerbated by the motor vehicle accident in 1985, he apparently did not have access to the Veteran's military records as there was no mention of any accident or treatment for a condition of the left shoulder (the diagnosis was trapezius strain). The examiner also noted that Dr. D.R.C. neglected to mention the history of fall eight to ten months before in 2006 with onset of left shoulder pain. 

Based on a review of the evidence, the Board concludes that service connection for a bilateral shoulder disorder is not warranted. Although the evidence shows that the Veteran reported an injury in service and also had a motor vehicle accident in service, and has been diagnosed with a bilateral shoulder disorder, it does not show that it is related to his military service. 

The evidence does not show that any currently diagnosed disorder is related to the Veteran's reported 1978 fall or to the 1985 motor vehicle accident injury. With regards to the reported fall, the Veteran's STRs show a complaint of chest pain in June 1978; however, no bilateral shoulder complaints were reported. Examinations following that reported injury in June 1980 and January 1983 both revealed clinically normal upper extremities. In his reports of medical history, the Veteran denied symptoms of swollen or painful joints; arthritis, rheumatism, or bursitis; bone, joint or other deformity; and painful or "trick" shoulder. While the Veteran was diagnosed with a right trapezius strain following the 1985 motor vehicle accident, his STRs fail to show any chronic shoulder disorder following that accident. As noted above, examinations in January 1987 and April 1991 continued to reveal clinically normal upper extremities. The Veteran specifically denied all pertinent symptoms, including swollen or painful joints; arthritis, rheumatism, or bursitis; bone, joint or other deformity; and painful or "trick" shoulder in his April 1991 report of medical history. 

Furthermore, the Veteran's post-service treatment records reflect a fall from a ladder injuring his right arm in 2005, and a report of a fall injuring his left arm eight to ten months earlier in 2006. Additionally, X-rays of both shoulders in 2004 were normal. None of the Veteran's treatment records contain any opinion relating any bilateral shoulder disorder as having its onset during the Veteran's military service or as being otherwise related to his military service. In this case, the contemporaneous service records and post-service treatment records all fail to show that the onset of any current bilateral disorder began during service. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (contemporaneous evidence has greater probative value than history as reported by the claimant). 

The evidence of record weighs against a finding that a current bilateral shoulder disorder is related to the Veteran's military service. The collective opinions of the 2008 and 2013 VA examiners show that a currently diagnosed disorder is not related to the Veteran's military service. As the examiners' opinions were formed after interviewing and examining the Veteran, as well as reviewing the evidence, and are supported by thorough rationales, the Board accords them great probative value. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (the probative value of a medical opinion comes from when there is factually accurate, fully articulated, and sound reasoning for the conclusion, not just from mere review of the claims file). 

The Board acknowledges the positive opinions from Dr. D.R.C., but accords such less probative value than the VA examiners' collective opinions. Dr. D.R.C. did not discuss the Veteran's STRs showing all normal examinations of his upper extremities after the reported 1978 injury and the 1985 motor vehicle accident. Additionally, as noted by the 2013 examiner, Dr. D.R.C. did not address the Veteran's history of a fall eight to ten months before in 2006 with onset of left shoulder pain. Dr. D.R.C. also did not address the fact that X-rays of both shoulders in 2004 were normal. Given that Dr. D.R.C. did not address the evidence showing normal upper extremities with no bilateral shoulder complaints after the 1978 reported fall and 1985 motor vehicle accident; did not address the normal X-rays in 2004; and did not discuss the Veteran's post-service fall from a ladder in 2005 and report of a fall eight to ten months earlier in 2006, the Board concludes that these positive opinions have less probative value than those of the VA examiners. Consequently, a finding of service connection based on Dr. D.R.C.'s opinions is not warranted. 

In this case, the first evidence of any shoulder complaints is not until 2001. The United States Court of Appeals for Veterans Claims (Court) has indicated that normal medical findings at the time of separation from service, as well as the absence of any medical records of a diagnosis or treatment for many years after service is probative evidence against the claim. See Mense v. Derwinski, 1 Vet. App. 354, 356 (1991) (affirming Board where it found that veteran failed to account for the lengthy time period after service for which there was no clinical documentation of low back condition). See also Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (a prolonged period without medical complaint can be considered, along with other factors concerning a claimant's health and medical treatment during and after military service, as evidence of whether an injury or a disease was incurred in service which resulted in any chronic or persistent disability). Thus, the lack of any evidence of bilateral shoulder disorder complaints, symptoms, or findings for a decade between the Veteran's military service and the earliest evidence of a bilateral shoulder disorder is itself evidence which tends to show that a bilateral shoulder disorder did not have its onset in service or for many years thereafter.

Furthermore, as the evidence does not show that the Veteran had arthritis manifest to a degree of 10 percent or more within one year of discharge, the Board finds that service connection on a presumptive basis is not warranted. 

Similarly, the Board also finds that the evidence does not establish a continuity of symptomatology and therefore a nexus under Walker as arthritis is a chronic disease as per 38 C.F.R. § 3.309. As already discussed above, the Veteran's retirement examination was normal, and he denied pertinent symptoms in his retirement report of medical history. Moreover, X-rays in 2004 were normal and did not show arthritis. As such, the evidence does not support a continuity of bilateral shoulder arthritis symptomatology dating back to his military service.

The overall evidence of record as discussed above weighs against a finding of a bilateral shoulder disorder being associated with the Veteran's active duty. Without at least an equipoise in the evidence showing an association between a bilateral shoulder disorder and his active duty, service connection for a bilateral shoulder disorder is not warranted.

Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet.App. 428, 435 (2011), as to the specific issue in this case, the etiology of a bilateral shoulder disorder - a disease ascertained by specific medical testing - falls outside the realm of common knowledge of a lay person. See Jandreau at 1377 n.4 (lay persons not competent to diagnose cancer). The Veteran's own assertions as to etiology have no probative value.

Without competent and credible evidence of an association between a bilateral shoulder disorder and the Veteran's active duty, service connection for a bilateral shoulder disorder is not warranted. Based on this evidentiary posture, the Board concludes that the preponderance of the evidence is against the Veteran's claim for service connection for a bilateral shoulder disorder. As the preponderance of the evidence is against this claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claim of entitlement to service connection for a bilateral shoulder disorder is denied. See 38 U.S.C.A § 5107 (West 2014). 

 2. Left Calf Disorder

The Veteran's May 1971 enlistment examination, as well as February 1974 and April 1978 examinations, all revealed clinically normal lower extremities. The Veteran's denial of joint symptoms in his reports of medical history were reported above and will not be reiterated. A June 1978 record shows that the Veteran complained of chest pain; no left calf complaints were made. June 1980, January 1983, January 1987 examinations again all revealed clinically normal lower extremities. The Veteran's April 1991 examination revealed clinically abnormal lower extremities; decreased range of motion of the right ankle was noted. As the Veteran's denial of joint symptoms in his June 1980, January 1983, and April 1991 reports of medical history were also discussed above, they will not be repeated. An April 1991 record shows that the Veteran reported occasional cramps in legs after strenuous exercise. There is no indication of any specific left calf complaints in the Veteran's STRs, including following a fall reportedly occurring in 1978.

Post-service medical records include a VA examination in September 1991 in which the Veteran reported soreness in his calves; no diagnosis was rendered. The next indication of any left calf complaints was in 2002. An ultrasound of the Veteran's left upper leg in January 2002 showed no evidence of deep venous thrombosis. The Veteran's treatment records do not contain any diagnosis of a left calf disorder.

Dr. D.R.C.'s August 2008 opinion shows that the Veteran's left calf symptoms could be related to the fall in 1978. They opined that a fall and injury to the degree that was sustained by the Veteran in 1978 could justifiably explain the occasional soreness he was experiencing in the left calf due to compensation for arthritis he had in other parts of his body. They further opined that that plus the 20 years of active duty explained the symptoms he was currently experiencing. Dr. D.R.C. did not diagnosis the Veteran with any left calf disorder.

As noted above, at the April 2013 VA examination, the examiner reported the Veteran's pertinent STRs and post-service treatment records. The examiner opined that there was no radiologic or clinical evidence to suggest a diagnosis of any significant condition of the left calf. The examiner noted that the Veteran complained of left knee/calf pain in 2001 due to gait disturbance related to his service-connected right ankle pain. 

Based on a review of the evidence, the Board concludes that service connection for a left calf disorder must be denied. Although the Veteran is competent and credible to report having left calf pain, a chronic disorder has not been shown at any time since the claim for service connection. 

In this case, the 2013 examiner specifically opined that the Veteran does not have a current disorder. His treatment records throughout this appeal have not shown a currently diagnosed disorder. As the VA examiner's opinion was formed after interviewing and examining the Veteran, and includes a well-reasoned rationale, the Board accords it great probative value. See Nieves-Rodriguez, 22 Vet. App. 295. Consequently, the evidence fails to support a finding that the Veteran currently has, or has ever had, a left calf disorder since filing his claim for service connection. 

The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. §§ 1110, 1131. See also Degmetich at 1332 (holding that interpretation of sections 1110 and 1131 of the statute as requiring the existence of a present disability for VA compensation purposes cannot be considered arbitrary). In other words, the evidence must show that, at some point during the appeal period, the Veteran has the disability for which benefits are being claimed. Here, for the reasons set forth above, the overall evidence of record weighs against a finding of a left calf disorder at any time during the appeal period. 

The Board acknowledges that Dr. D.R.C. opined that the Veteran's left calf pain was related to his military service. However, Dr. D.R.C. did not actually diagnose the Veteran with any disorder. Pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted. Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999), dismissed in part and vacated in part on other grounds, Sanchez-Benitez v. Principi, 239 F.3d 1356 (Fed. Cir. 2001).

At no time since the Veteran filed his claim for service connection for a left calf disorder in April 2007 has such a chronic disability been shown. See McClain v. Nicholson, 21 Vet. App. 319 (2007) (which stipulates that a service connection claim may be granted if a diagnosis of a chronic disability was made during the pendency of the appeal, even if the most recent medical evidence suggests that the disability resolved). Based on this evidentiary posture, the Board concludes that the preponderance of the evidence is against the Veteran's claim for service connection for a left calf disorder. As the preponderance of the evidence is against this claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claim of entitlement to service connection for a left calf disorder is denied. See 38 U.S.C.A § 5107.

 3. Left Hand and Thumb Disorders

The Veteran's May 1971 enlistment examination, as well as February 1974 and April 1978 examinations, all revealed clinically normal upper extremities. Since the Veteran's denial of joint symptoms in his February 1974 and April 1978 reports of medical history were reported above, they will not be addressed again. A June 1978 record shows that the Veteran complained of chest pain; no left hand and/or thumb complaints were made. Examinations in June 1980, January 1983, January 1987, and April 1991 all revealed clinically normal upper extremities. Again, the Veteran's denial of joints symptoms in his June 1980, January 1983, and April 1991 reports of medical history were already detailed above. There is no indication of any left hand or thumb complaints following a fall reportedly occurring in 1978.

Post-service records include a September 1991 VA examination in which the Veteran reported that his hands were numb in the morning; no hand or thumb diagnoses were rendered. The next evidence of any hand or thumb complaints is in July 2000. At that time, X-rays of the left thumb showed degenerative change versus old avulsion injury versus calcific tendonitis. A February 2005 treatment record shows that the Veteran reported having left thumb numbness two to three years ago and was told he had arthritis beginning in thumb secondary to old injury. The Veteran's treatment records do not contain medical opinions relating left hand and/or thumb disorders to his military service.

A positive opinion Dr. D.R.C. was provided in February 2007 as discussed above. As the Board already discussed this opinion in full above, it will not be repeated again. Dr. D.R.C.'s opinion included the Veteran's arthritis in his thumb as being consistent with the Veteran's history of a fall as described. 
The Veteran was afforded a VA examination in February 2008. The examiner reported the Veteran's pertinent post-service treatment records. The Veteran reported that he did not recall a specific injury. He reported that he thought it was related to the 1978 fall. The Veteran was diagnosed with left thumb osteoarthritis. The examiner opined that the Veteran's current complaints were less likely than not caused by or a result of his reported fall in 1978. The examiner reported that although that fall in 1978 was significant as reported by the Veteran, there was no evidence of complaints of thumb pain at time of injury, or at any time throughout the rest of his military career. The examiner noted that they were not able to find any documentation of left thumb pain until 2000, some nine years after his military retirement. The examiner concluded that the Veteran's thumb pain was less likely related to service. 

The Veteran submitted an additional medical opinion from Dr. D.R.C. dated in August 2008. They reported reviewing evidence submitted from the Veteran that he had submitted to VA in support of his claim as well as X-rays taken since 2004. Dr. D.R.C. opined that the Veteran's arthritis of the left thumb could be related back to the fall in 1978. They opined that a fall and injury to the degree that was sustained by the Veteran in 1978 could justifiably explain the arthritis that he was experiencing in the left thumb. Dr. D.R.C. further opined that that plus the 20 years of active duty explained the symptoms he was currently experiencing. Dr. D.R.C. opined that the July 2000 X-ray findings were consistent with a traumatic injury as described in the 1978 fall. Dr. D.R.C.'s conclusion was discussed in detail above and will not be repeated again. 

The Veteran was provided a VA examination in April 2013. The Veteran's pertinent STRs and post-service records were reported. The examiner noted that there were no complaints or treatment for left thumb pain during active duty and no left thumb pain until 2000, nine years after retirement. He was diagnosed with mild age related arthritis of the distal interphalangeal (DIP) joints of the left hand. The Veteran reported inuring his thumb in a water training accident. 

The examiner opined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner observed that there was no documentation of complaints, treatment, or diagnosis of any condition of the left thumb while in service. The examiner also noted that there was no documentation of any traumatic injury in 1978 in the STRs. The examiner observed that the Veteran was not seen in 1985 with complaints of injury to the thumb. The examiner noted that the Veteran continued on in the service for another six years without complaint of left thumb numbness and did not have any permanent profile for any condition of the left thumb. The examiner noted that there was no notation of any diagnosed or treated condition of the left thumb in the current medical records and no treatment noted since discharge some 22 years ago. The examiner observed that the Veteran was first seen in 2005 with complaints of left thumb numbness some 14 years after discharge from service. The examiner reported that the Veteran was not currently seen for treatment of that condition as there were no recent treatment notes. The examiner reported that findings on X-ray that day noted age related degenerative joint disease of the left hand. The examiner concluded that there was insufficient medical evidence to substantiate a nexus.

The examiner opined that with reference to Dr. D.R.C.'s letters, he had no treatment records related to the Veteran's left thumb. The examiner observed that although Dr. D.R.C. noted in his conclusion that the Veteran's left thumb numbness/degenerative joint disease was due primarily to a traumatic fall mentioned in his military health records as occurring in 1978 during military service and exacerbated by the motor vehicle accident in 1985, he apparently did not have access to the Veteran's military records as there was no mention of any accident or treatment for a condition of the left thumb. 

Based on a review of the evidence, the Board concludes that service connection for left hand and thumb disorders is not warranted. Although the evidence shows that the Veteran reported an injury in service and has been diagnosed with left hand and thumb disorders, it does not show that they are related to his military service. 

The evidence does not show that any currently diagnosed disorder is related to the Veteran's reported 1978 fall. While the Veteran's STRs show a complaint of chest pain in June 1978, no left hand or thumb complaints were reported. Examinations following that reported injury in June 1980 and January 1983, as well as examinations in January 1987 and April 1991, all revealed clinically normal upper extremities. The Veteran's reports of medical history all show that he repeatedly denied symptoms of swollen or painful joints; arthritis, rheumatism, or bursitis; and bone, joint or other deformity. None of the Veteran's treatment records contain any opinion relating any left hand and thumb disorder as having its onset during the Veteran's military service or as being otherwise related to his military service. In this case, the contemporaneous service records and post-service treatment records all fail to show that the onset of any current left hand and thumb disorder began during service. See Curry at 68. 

The evidence of record weighs against a finding that current left hand and thumb disorders are related to the Veteran's military service. The collective opinions of the 2008 and 2013 VA examiners show that currently diagnosed disorders are not related to the Veteran's military service. As the examiners' opinions were formed after interviewing and examining the Veteran, as well as reviewing the evidence, and are supported by thorough rationales, the Board accords them great probative value. See Nieves-Rodriguez, 22 Vet. App. 295. 

The Board acknowledges the positive opinions from Dr. D.R.C., but accords such less probative value than the VA examiners' opinions. Dr. D.R.C. did not discuss the Veteran's STRs showing all normal examinations of his upper extremities after the reported 1978 injury in addition to the absence of any left hand and thumb complaints during service. Additionally, as noted by the 2013 examiner, Dr. D.R.C.'s records do not show treatment for the Veteran's left thumb. Furthermore, Dr. D.R.C. provided no rationale for why the findings shown on X-rays in 2000 were consistent with the reported fall. Given that Dr. D.R.C. did not address the evidence showing normal upper extremities with no left hand or thumb complaints throughout the Veteran's military service, and did not provide a rationale for why the X-rays were consistent with the fall, the Board concludes that these positive opinions have less probative value than those of the VA examiners. Consequently, a finding of service connection based on Dr. D.R.C.'s opinions is not warranted. 

In this case, while the Veteran reported numbness in 1991, the first evidence of any diagnosed disorder is not until 2000. The Court has indicated that normal medical findings at the time of separation from service, as well as the absence of any medical records of a diagnosis or treatment for many years after service is probative evidence against the claim. See Mense at 356; see also Maxson at 1333. Thus, the lack of any evidence of left hand and thumb disorder complaints, symptoms, or findings for almost a decade between the Veteran's military service and 1991 examination and the earliest evidence of left hand and thumb disorders is itself evidence which tends to show that left hand and thumb disorders did not have their onset in service or for many years thereafter.

Furthermore, as the evidence does not show that the Veteran had arthritis manifest to a degree of 10 percent or more within one year of discharge, the Board finds that service connection on a presumptive basis is not warranted. 

Similarly, the Board also finds that the evidence does not establish a continuity of symptomatology and therefore a nexus under Walker, as arthritis is a chronic disease as per 38 C.F.R. § 3.309. As already discussed above, the Veteran's retirement examination was normal, and he denied pertinent symptoms in his retirement report of medical history. Additionally, no diagnosis was rendered at the 1991 VA examination. Consequently, the evidence fails to show a continuity of left hand and thumb arthritis symptomatology dating back to his military service.

The overall evidence of record as discussed above weighs against a finding of left hand and thumb disorders being associated with the Veteran's active duty. Without at least an equipoise in the evidence showing an association between left hand and thumb disorders and his active duty, service connection for left hand and thumb disorders is not warranted.

Although lay persons are competent to provide opinions on some medical issues, see Kahana at 435, as to the specific issue in this case, the etiology of left hand and thumb disorders - diseases ascertained by specific medical testing - falls outside the realm of common knowledge of a lay person. See Jandreau at 1377 n.4. The Veteran's own assertions as to etiology have no probative value.

Without competent and credible evidence of an association between left hand and thumb disorders and the Veteran's active duty, service connection for left hand and thumb disorders is not warranted. Based on this evidentiary posture, the Board concludes that the preponderance of the evidence is against the Veteran's claims for service connection for left hand and thumb disorders. As the preponderance of the evidence is against these claims, the benefit-of-the-doubt rule does not apply, and the Veteran's claims of entitlement to service connection for left hand and thumb disorders are denied. See 38 U.S.C.A § 5107.

 4. Cervical Spine Disorder

The Veteran's May 1971 enlistment examination and February 1974 and April 1978 examinations all revealed a clinically normal spine. As noted above, the Veteran denied all pertinent joint symptoms in his February 1974 and April 1978 reports of medical history. He also denied recurrent back pain. A June 1978 record shows that the Veteran complained of chest pain; no cervical spine complaints were made. June 1980 and January 1983 examinations again revealed a clinically normal spine. The Veteran denied all joint symptoms and recurrent back pain in his reports of medical history. A September 1985 record shows that the Veteran was in a motor vehicle accident two months ago. He reported cervical pain and described pain following the accident. The diagnosis was right upper trapezius strain. A January 1987 examination and the Veteran's April 1991 retirement examination both revealed a clinically normal spine. The Veteran denied joint symptoms and recurrent back pain in the April 1991 report of medical history. There is no indication of any cervical spine complaints following a fall reportedly occurring in 1978.

The earliest evidence of post-service cervical spine complaints is in 2001. X-rays in August 2001 showed narrow disc space and foramina. X-rays in June 2004 showed degenerative changes. A February 2005 treatment record shows that the Veteran reported neck pain. The Veteran's treatment records do not contain any medical opinions relating a cervical spine disorder to his military service.

A positive opinion from Dr. D.R.C. was provided in February 2007 as discussed above. As the Board already discussed this opinion in full above, it will not be repeated again. Dr. D.R.C.'s opinion included the Veteran's arthritis in his neck as being consistent with the Veteran's history of a fall as described. 

The Veteran was afforded a VA examination in February 2008. The examiner reported the Veteran's pertinent post-service treatment records. The Veteran reported that his neck started at the same time with turning his head in the car during the 2001 motor vehicle accident. He reported that it was not actually a motor vehicle accident, but that VA said it was. He reported that his chiropractor thought he injured his neck in the fall and that carrying heavy packs caused neck pain. The Veteran was diagnosed with degenerative disc disease, spurs, and retrolisthesis. 

The examiner opined that the Veteran's current complaints were less likely than not caused by or a result of his reported fall in 1978. The examiner reported that although that fall in 1978 was significant as reported by the Veteran, there was no evidence of complaints of neck pain at time of injury, or at any time throughout the rest of his military career. The examiner noted that they were not able to find any documentation of neck pain until 2001, some ten years after his military retirement. The examiner concluded that the Veteran's neck pain was less likely than not related to service. 

The Veteran submitted an additional medical opinion from Dr. D.R.C. dated in August 2008. Dr. D.R.C. opined that the Veteran's arthritis of the cervical spine could be related back to the fall in 1978. They opined that a fall and injury to the degree that was sustained by the Veteran in 1978 could justifiably explain the arthritis that he was experiencing in the cervical spine. Dr. D.R.C. further opined that that plus the 20 years of active duty explained the symptoms he was currently experiencing. Dr. D.R.C.'s conclusion was discussed in detail above and will not be repeated again. 

The Veteran was provided a VA examination in April 2013. The Veteran's pertinent STRs and post-service records were reported. The examiner noted that there were no complaints or treatment for neck pain while in service. With regard to the 1985 motor vehicle accident, the examiner noted that the Veteran had a right trapezius strain. The Veteran was diagnosed with moderately advanced cervical spine degenerative disc disease. He reported that he was driving when he went to turn his head to the left and his whole neck went numb. He reported that he did not have X-rays of the neck. The Veteran reported that he did have a motor vehicle accident in 1985 and that his neck pain resolved at that time. He reported that in 2004, he started getting a lot of neck pain on a daily basis. 

The examiner opined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner observed that there was no documentation of complaints, treatment, or diagnosis of any condition of the cervical spine while in service. The examiner also noted that there was no documentation of any traumatic injury in 1978 in the STRs. The examiner noted that the Veteran continued on in the service for another six years without complaint of cervical spine pain and did not have any permanent profile for any condition of the neck. The examiner observed that the Veteran was first found to have degenerative disc disease in August 2001 by X-ray ten years post discharge. The examiner reported that the Veteran had been seen on several occasions for his cervical degenerative disc disease. The examiner reported that findings on X-ray that day noted moderately advanced degenerative disc disease, but that there was insufficient medical evidence to substantiate a nexus as there was no noted in-service treatment for complaints of neck pain. The examiner opined that with reference to Dr. D.R.C.'s letters, he apparently did not have access to the Veteran's military records as there was no mention of any accident or treatment for a condition of the cervical spine at the time of injury. 

Based on a review of the evidence, the Board concludes that service connection for a cervical spine disorder is not warranted. Although the evidence shows that the Veteran reported an injury in service and has been diagnosed with a cervical spine disorder, it does not show that it is related to his military service. 

The evidence does not show that any currently diagnosed disorder is related to the Veteran's reported 1978 fall. While the Veteran's STRs show a complaint of chest pain in June 1978, no cervical spine complaints were reported. Examinations following that reported injury in June 1980 and January 1983, as well as examinations in January 1987 and April 1991, all revealed a clinically normal spine. The Veteran's reports of medical history all show that he repeatedly denied symptoms of swollen or painful joints; arthritis, rheumatism, or bursitis; bone, joint or other deformity; and recurrent back pain. None of the Veteran's treatment records contain any opinion relating any cervical spine disorder as having its onset during the Veteran's military service or as being otherwise related to his military service. In this case, the contemporaneous service records and post-service treatment records all fail to show that the onset of any current cervical spine disorder began during service. See Curry at 68. 

The evidence of record weighs against a finding that a current cervical spine disorder is related to the Veteran's military service. The collective opinions of the 2008 and 2013 VA examiners show that a currently diagnosed disorder is not related to the Veteran's military service. As the examiners' opinions were formed after interviewing and examining the Veteran, as well as reviewing the evidence, and are supported by thorough rationales, the Board accords them great probative value. See Nieves-Rodriguez, 22 Vet. App. 295. 

The Board acknowledges the positive opinions from Dr. D.R.C., but accords such less probative value than the VA examiners' opinions. Dr. D.R.C. did not discuss the Veteran's STRs showing all normal examinations of his spine after the reported 1978 injury in addition to the absence of any cervical spine complaints except for pain following the 1985 motor vehicle accident at which time a right trapezius diagnosis was rendered and not a cervical spine diagnosis. Given that Dr. D.R.C. did not address the evidence showing a normal spine, the Board concludes that these positive opinions have less probative value than those of the VA examiners. Consequently, a finding of service connection based on Dr. D.R.C.'s opinions is not warranted. 

In this case, the first evidence of any cervical spine complaints is not until 2001. The Court has indicated that normal medical findings at the time of separation from service, as well as the absence of any medical records of a diagnosis or treatment for many years after service is probative evidence against the claim. See Mense at 356; see also Maxson at 1333. Thus, the lack of any evidence of cervical spine disorder complaints, symptoms, or findings for a decade between the Veteran's military service and the earliest evidence of a cervical spine disorder is itself evidence which tends to show that a cervical spine disorder did not have its onset in service or for many years thereafter.

Furthermore, as the evidence does not show that the Veteran had arthritis manifest to a degree of 10 percent or more within one year of discharge, the Board finds that service connection on a presumptive basis is not warranted. 

Similarly, the Board also finds that the evidence does not establish a continuity of symptomatology and therefore a nexus under Walker as arthritis is a chronic disease as per 38 C.F.R. § 3.309. As already discussed above, the Veteran's retirement examination was normal, and he denied pertinent symptoms in his retirement report of medical history. Therefore, the evidence fails to show a continuity of cervical spine arthritis symptomatology dating back to his military service.
The overall evidence of record as discussed above weighs against a finding of a cervical spine disorder being associated with the Veteran's active duty. Without at least an equipoise in the evidence showing an association between a cervical spine disorder and his active duty, service connection for a cervical spine disorder is not warranted.

Although lay persons are competent to provide opinions on some medical issues, see Kahana at 435, as to the specific issue in this case, the etiology of a cervical spine disorder - a disease ascertained by specific medical testing - falls outside the realm of common knowledge of a lay person. See Jandreau at 1377 n.4. The Veteran's own assertions as to etiology have no probative value.

Without competent and credible evidence of an association between a cervical spine disorder and the Veteran's active duty, service connection for a cervical spine disorder is not warranted. Based on this evidentiary posture, the Board concludes that the preponderance of the evidence is against the Veteran's claim for service connection for a cervical spine disorder. As the preponderance of the evidence is against this claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claim of entitlement to service connection for a cervical spine disorder is denied. See 38 U.S.C.A § 5107.

 5. Thoracolumbar Spine Disorder

As already discussed above, examinations throughout the Veteran's military service revealed a clinically normal spine and his reports of medical history show that he reported no pertinent symptoms. A June 1978 record shows that the Veteran complained of chest pain; no thoracolumbar spine complaints were made. No thoracolumbar spine complaints were made in relation to the 1985 motor vehicle accident. There is no indication of any thoracolumbar spine complaints during the Veteran's military service, including following a fall reportedly occurring in 1978.

The earliest evidence of post-service thoracolumbar complaints is in 2004. X-rays in June 2004 showed early degenerative changes. A February 2005 treatment record shows that the Veteran reported lower back pain. A December 2006 record from Dr. D.R.C. shows that the Veteran was seen for lower back pain. A workman's compensation injury two years ago was noted. It was reported that the Veteran had had no recent falls or accidents. The Veteran's treatment records do not contain medical opinions relating a thoracolumbar spine disorder to his military service.

A positive opinion Dr. D.R.C. was provided in February 2007 as discussed above. As the Board already discussed this opinion in full above, it will not be repeated again. Dr. D.R.C.'s opinion included the Veteran's arthritis in his low back as being consistent with the Veteran's history of a fall as described. 

The Veteran was afforded a VA examination in February 2008. The examiner reported the Veteran's pertinent post-service treatment records. The examiner noted that X-rays in June 2004 was the first time the lower back was looked at. The Veteran reported that his chiropractor told him that it was likely due to the fall. The Veteran was diagnosed with lumbar degenerative disc disease. 

The examiner opined that the Veteran's current complaints were less likely than not caused by or a result of his reported fall in 1978. The examiner reported that although that fall in 1978 was significant as reported by the Veteran, there was no evidence of complaints of lower back pain at time of injury, or at any time throughout the rest of his military career. The examiner noted that they were not able to find any documentation of lower back pain until 2004, some 13 years after his military retirement. The examiner concluded that the Veteran's lower back pain was less likely related to service. 

The Veteran submitted an additional medical opinion from Dr. D.R.C. dated in August 2008. Dr. D.R.C. opined that the Veteran's arthritis of the lumbar and thoracic spines could be related back to the fall in 1978. They opined that a fall and injury to the degree that was sustained by the Veteran in 1978 could justifiably explain the arthritis that he was experiencing in the lumbar and thoracic spines. Dr. D.R.C. further opined that that plus the 20 years of active duty explained the symptoms he was currently experiencing. Dr. D.R.C.'s conclusion was discussed in detail above and will not be repeated again. 

The Veteran was provided a VA examination in April 2013. The Veteran's pertinent STRs and post-service records were reported. The examiner noted that there were no complaints or treatment for low back pain while in service. The Veteran was diagnosed with mild, age appropriate thoracolumbar spine degenerative disc disease. The Veteran denied any specific injury to his thoracolumbar spine. He reported that he felt that it was due to carrying his ruck sack, etc. during his military career. 

The examiner opined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner observed that there was no documentation of complaints, treatment, or diagnosis of any condition of the thoracic or lumbar spine while in service. The examiner also noted that there was no documentation of any traumatic injury in 1978 in the STRs. The examiner noted that the Veteran was first seen in 2004 with X-ray findings of degenerative joint disease, some 14 years post discharge. The examiner observed that Dr. D.R.C. noted at the Veteran's initial visit in 2006 that he had a workman's compensation injury to the low back two years previously. The examiner reported that the Veteran had mild, age related findings of degenerative disc disease of the thoracic and lumbar spine on that day's examination. The examiner opined that there was insufficient medical evidence to substantiate a nexus.

The examiner opined that with reference to Dr. D.R.C.'s letters, although he noted in his conclusion that the Veteran's thoracic/lumbar spine was due primarily to a traumatic fall mentioned in his military health records as occurring in 1978 during military service and exacerbated by the motor vehicle accident in 1985, he apparently did not have access to the Veteran's military records as there was no mention of any accident or treatment for a condition of the lumbar spine. The examiner also noted that Dr. D.R.C. neglected to mention the history of workman's compensation injury to the low back as a possible cause of treatment. 

Based on a review of the evidence, the Board concludes that service connection for a thoracolumbar spine disorder is not warranted. Although the evidence shows that the Veteran reported an injury in service and has been diagnosed with a thoracolumbar spine disorder, it does not show that it is related to his military service. 

The evidence does not show that any currently diagnosed disorder is related to the Veteran's reported 1978 fall. While the Veteran's STRs show a complaint of chest pain in June 1978, no thoracolumbar spine complaints were reported. Examinations following that reported injury in June 1980 and January 1983, as well as examinations in January 1987 and April 1991, all revealed a clinically normal spine. The Veteran's reports of medical history all show that he repeatedly denied symptoms of swollen or painful joints; arthritis, rheumatism, or bursitis; bone, joint or other deformity; and recurrent back pain. None of the Veteran's treatment records contain any opinion relating any thoracolumbar spine disorder as having its onset during the Veteran's military service or as being otherwise related to his military service. In this case, the contemporaneous service records and post-service treatment records all fail to show that the onset of any current thoracolumbar spine disorder began during service. See Curry at 68. 

The evidence of record weighs against a finding that a current thoracolumbar spine disorder is related to the Veteran's military service. The collective opinions of the 2008 and 2013 VA examiners show that a currently diagnosed disorder is not related to the Veteran's military service. As the examiners' opinions were formed after interviewing and examining the Veteran, as well as reviewing the evidence, and are supported by thorough rationales, the Board accords them great probative value. See Nieves-Rodriguez, 22 Vet. App. 295. 

The Board acknowledges the positive opinions from Dr. D.R.C., but accords such less probative value than the VA examiners' opinions. Dr. D.R.C. did not discuss the Veteran's STRs showing all normal examinations of his spine after the reported 1978 injury in addition to the absence of any thoracolumbar spine complaints during service. As noted by the 2013 examiner, Dr. D.R.C. also did not address the fact that the Veteran reportedly had a post-service workman's compensation injury. Given that Dr. D.R.C. did not address the evidence showing a normal spine or the workman's compensation injury, the Board concludes that these positive opinions have less probative value than those of the VA examiners. Consequently, a finding of service connection based on Dr. D.R.C.'s opinions is not warranted. 

In this case, the first evidence of any thoracolumbar spine complaints is not until 2004. The Court has indicated that normal medical findings at the time of separation from service, as well as the absence of any medical records of a diagnosis or treatment for many years after service is probative evidence against the claim. See Mense at 356; see also Maxson at 1333. Thus, the lack of any evidence of thoracolumbar spine disorder complaints, symptoms, or findings for a decade between the Veteran's military service and the earliest evidence of a thoracolumbar spine disorder is itself evidence which tends to show that a thoracolumbar spine disorder did not have its onset in service or for many years thereafter.

Furthermore, as the evidence does not show that the Veteran had arthritis manifest to a degree of 10 percent or more within one year of discharge, the Board finds that service connection on a presumptive basis is not warranted. 

Similarly, the Board also finds that the evidence does not establish a continuity of symptomatology and therefore a nexus under Walker as arthritis is a chronic disease as per 38 C.F.R. § 3.309. As already discussed above, the Veteran's retirement examination was normal, and he denied pertinent symptoms in his retirement report of medical history. Furthermore, the Veteran had a post-service workman's compensation injury. The evidence fails to show a continuity of thoracolumbar spine arthritis symptomatology dating back to his military service.

The overall evidence of record as discussed above weighs against a finding of a thoracolumbar spine disorder being associated with the Veteran's active duty. Without at least an equipoise in the evidence showing an association between a thoracolumbar spine disorder and his active duty, service connection for a thoracolumbar spine disorder is not warranted.

Although lay persons are competent to provide opinions on some medical issues, see Kahana at 435, as to the specific issue in this case, the etiology of a thoracolumbar spine disorder - a disease ascertained by specific medical testing - falls outside the realm of common knowledge of a lay person. See Jandreau at 1377 n.4. The Veteran's own assertions as to etiology have no probative value.

Without competent and credible evidence of an association between a thoracolumbar spine disorder and the Veteran's active duty, service connection for a thoracolumbar spine disorder is not warranted. Based on this evidentiary posture, the Board concludes that the preponderance of the evidence is against the Veteran's claim for service connection for a thoracolumbar spine disorder. As the preponderance of the evidence is against this claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claim of entitlement to service connection for a thoracolumbar spine disorder is denied. See 38 U.S.C.A § 5107.


ORDER

Entitlement to service connection for a bilateral shoulder disorder is denied.

Entitlement to service connection for a left calf disorder is denied.

Entitlement to service connection for a left hand disorder is denied.

Entitlement to service connection for a left thumb disorder is denied.

Entitlement to service connection for a cervical spine disorder is denied.

Entitlement to service connection for a thoracolumbar spine disorder is denied.


REMAND

Regrettably, another remand is necessary for the issues of service connection for GERD and hiatal hernia, to include as secondary to medications prescribed for service-connected disabilities, and entitlement to a permanent clothing allowance under 38 U.S.C.A. § 1162. With regard to the service connection issue, the Veteran was provided examinations in March 2009 and December 2010; both examiners opined that the Veteran's GERD and hiatal hernia were not caused by or a result of medications prescribed for service-connected disabilities. However, neither examiner specifically provided an opinion as whether the medications prescribed for the Veteran's service-connected disabilities aggravate his GERD and hiatal hernia. Therefore, a remand is necessary to obtain an addendum medical opinion.

The Board also notes that the Veteran's April 2013 VA examination report appears to raise the possibility of a causal connection between the claimed left knee disorder and a service-connected right ankle disorder. This claim should thus be addressed under 38 C.F.R. § 3.310 for secondary service connection, to include a new notice letter and VA examination.

As for the permanent clothing allowance, the Board's November 2011 remand directed the AOJ to readjudicate the Veteran's claim in a supplemental statement of the case (SSOC) after the requested development was completed. An SSOC was issued in February 2014; however, such did not address this issue. Therefore, a remand is necessary for an SSOC readjudicating this claim. 

Accordingly, the case is REMANDED for the following action:

1. Furnish the Veteran with a 38 C.F.R. § 3.159(b) notice letter addressing his claim for service connection for a left knee disorder under 38 C.F.R. § 3.310 (secondary service connection). 

2. After obtaining the appropriate release of information forms where necessary, procure records of treatment that the Veteran has recently received. The Board is particularly interested in records of such treatment that the Veteran may have received from the Fort Knox VA Community Based Outpatient Clinic. If any such records identified by the Veteran are not available, he should be so informed, and notations as to the unavailability of such records and as to the attempts made to obtain the documents should be made in the claims file. All such available reports should be associated with the claims folder.

3. Obtain an addendum medical opinion from the December 2010 VA examiner (or, if unavailable, from a medical professional with appropriate expertise). The Veteran's claims file, including a copy of this remand, must be made available to the examiner for review in connection with the opinion. The examiner is requested to review the record and offer an opinion as to whether it is at least as likely as not (i.e., probability of approximately 50 percent) that the diagnosed GERD and hiatal hernia are aggravated (permanently worsened beyond normal progression) by any prescribed medications for the Veteran's service-connected disabilities [If GERD and hiatal hernia are found to have been aggravated by any prescribed medications for the Veteran's service-connected disabilities, the examiner should quantify the approximate degree of aggravation.] A complete rationale should be given for all opinions and conclusions expressed. 

5. The Veteran must also be afforded a VA orthopedic examination to address the claimed left knee disorder. Based upon the examination, a review of the claims file, and the reports of the Veteran, the examiner must opine whether it is at least as likely as not (a 50 percent or greater probability) that the left knee disorder was caused or aggravated by the right ankle disorder. All opinions must be supported by a rationale in a typewritten report.

6. Then, after completion of the above and any further development deemed necessary, readjudicate the Veteran's claims. If any benefit remains denied, the Veteran and his representative must be provided an SSOC addressing all three issues on remand. The requisite period of time for a response should be afforded. The case should then be returned to the Board for further consideration.

The Veteran has the right to submit additional evidence and argument on this matter. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 

[CONTINUED ON THE NEXT PAGE]


action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
A. C. MACKENZIE 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs